```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R & R CAPITAL, LLC              :      CIVIL ACTION
                                :
     v.                         :
                                :
LYN MERRITT, et al.             :      NO. 06-1554
```

                        MEMORANDUM AND ORDER

McLaughlin, J.                                        June 9, 2009

        This action concerns property rights in three horses. The plaintiff, R&R Capital LLC ("R&R"), entered into a business relationship with defendant Lyn Merritt to invest in real estate and horses through a number of investment partnerships. The relationship between R&R and Merritt broke down, and R&R has filed this lawsuit against Merritt and her wholly owned company Mer-Lyn Farms ("Mer-Lyn"), as well as related lawsuits in the state courts of New York, Pennsylvania, and Delaware.

        The action in this Court is a limited one, concerning only the possession of three "pinhooking" horses. The horses have been referred to in this litigation by their parentage: "by Mr. Greeley, out of Splashing Wave" ("Splashing Wave"), "by Belong To Me, out of Mambo-Jambo" ("Mambo-Jambo"), and "by Pulpit, out of Lipstick" ("Lipstick/Pulpit"). R&R purchased the horses in August 2004 and left them in the care of Merritt and her wholly-owned company, defendant Mer-Lyn Farms ("Mer-Lyn"). R&R seeks replevin of Splashing Wave and Mambo-Jambo and


rescission of the purchase of Lipstick/Pulpit.  Merritt and Mer-Lyn have counterclaimed for unpaid expenses incurred of caring for the three horses.[1]

R&R's rescission and replevin claims and the defendants' counterclaim were tried to the Court in a bench trial.  While the Court's decision was pending, plaintiff R&R filed a motion for contempt.  The motion alleges that Merritt violated an order of this Court enjoining her from selling or otherwise disposing of the horses until the case was decided.  The motion alleges that Merritt leased one of the horses, Splashing Wave, to a third-party and allowed the horse to be gelded, allegedly impairing its value.  As a sanction, R&R seeks to have Merritt's counterclaim for expenses for Splashing Wave stricken and to have Merritt sanctioned in the amount of the $140,000 purchase price that R&R paid for Splashing Wave.[2]

---

[1] The identity of the seller from whom R&R purchased the three pinhooking horses has been disputed by the parties.  R&R claimed that it bought the three pinhooking horses from Merritt or from her wholly owned company Mer-Lyn.  Merritt contended that the pinhooking horses had originally been purchased at auction on behalf of Pandora Farms, LLC, one of the joint investment companies set up by R&R and Merritt, for which Merritt was the managing partner.  Merritt contended that all three horses were therefore sold to R&R by Pandora Farms.  In its April 17, 2009, Memorandum and Order, issuing findings of fact after the bench trial in this matter, the Court found that Lipstick/Pulpit was sold to R&R by Merritt and Mer-Lyn, not Pandora Farms, but made no findings as to the seller of Splashing Wave or Mambo-Jambo.

[2] R&R also filed a Supplemental Motion for Contempt (Docket No. 42), alleging that Merritt was attempting to lease a second horse, Mambo-Jambo.  At the hearing held on both motions,

In opposition to the contempt motion, the defendants argue that this entire action, including the Order of this Court which Merritt has been accused of violating, has been rendered moot by an order issued in the pending New York litigation between the parties. The defendants also argue that Merritt's actions do not violate the terms of the Court's Order and were necessary and proper for the care of the horse. They also allege R&R had notice that the horse would be leased and did not object.

The Court issued a Memorandum and Order on the merits of the case on April 17, 2009. In it, the Court made findings of fact concerning all of the pending claims and entered a verdict in favor of R&R on its claim for rescission. Although the Court indicated that it would find in favor of Merritt and Mer-Lyn on their counterclaim and in favor of R&R on its replevin claim, the Court did not enter a verdict on those claims because of the pending contempt motion. Because the contempt motion sought to strike the defendants' counterclaims and suggested the R&R might no longer want possession of Splashing Wave, the Court declined to enter a final verdict on all claims until the contempt motion was decided. The defendants subsequently moved for relief from

---

it was undisputed that no lease concerning Mambo-Jambo was ever made, and R&R withdrew its contention that the Court's Order had ever been violated with respect to that horse. The Court, accordingly, denied the Supplemental Motion for Contempt as moot by separate order (Docket No. 57).

the April 17, 2009, Order under Federal Rule of Procedure 60(b).[3] The Court held a hearing on the motion for contempt on June 4, 2009.

The Court now decides R&R's motion for contempt. The Court will not address the defendants' argument that the motion, and this action, have been rendered moot by the New York litigation. The Court will address the mootness issue in resolving the defendants' Rule 60(b) motion, which advances the same argument, and which is not yet fully briefed. The Court finds that, even putting aside the question of mootness, R&R has not established that either Merritt or Mer-Lyn has acted in contempt of the Court's Orders.[4]

Federal courts have the inherent power to "impose . . . submission to their lawful mandates" and to sanction litigants and their counsel for violation of court orders. Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991). To award sanctions based on a violation of a court order, the United States Court of

---

[3] The defendants' motion (Docket No. 54) was originally filed as a motion for "judgment NOV," but the defendants have subsequently clarified that they intend it to seek relief under Federal Rule of Civil Procedure 60(b).

[4] The Court will also not address the defendants' related argument that they cannot be found in contempt because Splashing Wave was owned by Pandora Farms LLC at the time of the actions at issue. The defendants base their contention that Pandora Farms is the Splashing Wave's owner on the same order in New York litigation that is the basis for their mootness argument. 6/4/09 Tr. at 52, 99. The Court will address the effect of that order in ruling on the defendants' 60(b) motion.

Appeals for the Third Circuit has required that the conduct at issue must have violated a clear and specific mandate of the court, giving a fair notice of what conduct will risk contempt. Liberty Lincoln-Mercury v. Ford Motor Co., 134 F.3d 557, 568-69 (3d Cir. 1998).  The conduct amounting to contempt must be established by clear and convincing evidence.  Robin Woods, Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994).

On April 14, 2006, two days after the complaint in this action was filed, the Court issued an Order preventing the defendants from disposing of the horses at issue in the case.  In pertinent part, the Order states:

> Defendants Lyn Merritt and Mer-Lyn Farms are enjoined from selling or otherwise disposing of the three pinhooking horses that are the subject of this litigation until the resolution of the litigation.  This Order applies to Defendants, their officers, agents, servants, employees and any persons in active concert or participation with them.  This Order does not prohibit Defendants from turning the horses over to Plaintiff.

(Docket No. 4).  The Order expressly states that it was entered after a telephone conference with counsel and with the consent of the parties.

At the hearing on the contempt motion, Merritt did not dispute that she leased the horse, Splashing Wave, to a third-party, Katherine McKenna.  Merritt and McKenna entered a letter agreement on January 15, 2008.  Def. Hearing Ex. 3.  Merritt signed the letter on behalf of Pandora Farms LLC ("Pandora

5

Farms"), the entity which Merritt has contended is the owner of the horse.  Under the agreement, Pandora Farms agreed to register Splashing Wave with the Jockey Club in order to allow the horse to race.  McKenna agreed to train Splashing Wave at her own expense and then race the horse.  Any expenses McKenna incurred were to be paid out of Splashing Wave's winnings, with any amount left after expenses to be split equally between McKenna and Pandora Farms.  The agreement stated that, if the horse were sold, McKenna would get a 10% commission.

McKenna and Merritt, acting for Pandora Farms, later entered into a lease agreement, signed May 1, 2008, but effective retroactively as of January 1, 2008, for Splashing Wave, which in the interim had been registered with the Jockey Club under the name "Wave Warrior."  Def. Hearing Ex. 4.  This lease for Splashing Wave had the same essential terms as the letter agreement and was for a term of four years, with a termination date of May 1, 2012.

According to the deposition testimony of Katherine McKenna, admitted into evidence at the hearing, McKenna took possession of Splashing Wave in December 2007.  In February 2008, McKenna had the horse gelded.  McKenna obtained Merritt's permission before having the horse castrated.  She called Merritt and told her that the horse was unrideable because he would "hop up and down and try to mount the other horses."  McKenna told

Merritt that she feared that the horse was going to "flip over and kill himself and the rider that was on him" and told Merritt that she felt it was necessary to have the horse gelded. Merritt responded by telling her to "do [her] best." The horse was gelded and subsequently developed an infection that required a nine-day hospitalization. McKenna paid all the costs for the gelding and the subsequent medical treatment and hospitalization. McKenna Dep. at 12, 18-20, 34; Med. Records, R&R Hearing Exhibit 5.

McKenna trained Splashing Wave and entered him into races. Some of these races were "claiming races" or "stakes races" in which, as a condition for entering the race, each horse is available for purchase for a "claiming price." McKenna entered Splashing Wave in claiming races in 2008 for which he was given a "claiming price" of between $5,000 and $25,000 and, as a condition of entering those races, could have been purchased for that price. McKenna testified that, from her past experience, she did not believe Splashing Wave would be claimed by anyone, and he was never claimed. McKenna also testified that she did not tell Merritt that she was entering Splashing Wave in claiming races. McKenna Dep. at 41-46, 77-78; 6/4/09 Tr. at 46-47, 92.

In October 2008, after the motion for contempt was filed, McKenna returned Splashing Wave to Merritt and terminated her lease for the horse. McKenna testified that she was unaware

of the motion for contempt when she decided to return the horse. She testified that Splashing Wave had developed a leg injury in October 2008 that required him to take a "vacation" of longer than a month.  By that time, McKenna had spent over $17,000 more in expenses for the horse than the horse had earned in winnings. She returned the horse because she could no longer afford to take care of him.  McKenna Dep. at 24-25, 29, 52-53, 60-64, 75-76; 6/4/09 Tr. at 92-93.

In their opposition to the contempt motion, the defendants contended that they had given notice to R&R prior to entering into the lease with McKenna for Splashing Wave.  The defendants attached to their opposition a December 19, 2007, letter from Merritt to her counsel asking counsel to forward the contents to R&R's principals.  Def. Ex. G.[5]  The letter states that "in an effort to sell the horses," Merritt will be entering into agreements to train and race some horses, under which the trainers will pay all expenses, to be reimbursed out of race winnings, with any excess winnings being divided equally between the trainer and Pandora Farms.  The letter advises Ira Russack,

---

[5] The December 19, 2007, letter was sent pursuant to an order in the New York litigation requiring that Merritt, as managing partner of the R&R-Merritt investment partnerships, provide 48-hour notice to R&R of any disposition of partnership property.  Merritt's standard practice in sending such letters was to address them to her counsel, to be forwarded to R&R, and Merritt's counsel confirmed that the letter was so forwarded. 6/4/09 Tr. at 80-81, 88, 92.

owner of R&R, that he will have to get a racing license so that the horses can be raced.  The December 19, 2007, letter does not specifically refer to the pinhooking horses at issue in this litigation and the "horses" referenced in the letter could include other racehorses owned by the parties' investment partnerships that are not at issue here.

At the hearing on the contempt motion, the defendants produced another letter from Merritt, dated February 1, 2008, which directed her counsel to forward its contents to R&R's principals.  Def. Ex. I.  Merritt's counsel confirmed that the letter was forwarded to R&R.  The letter refers back to prior letters concerning the necessity of Ira Russack getting his racing licenses "in order to race and sell horses that are jointly owned."  The letter then specifically refers to the three pinhooking horses by name and says that they "are among the horses that need to be raced."  The letter specifically mentions that the two male pinhooking horses, Splashing Wave and Mambo-Jambo, may need to be gelded in order to allow them to be trained for racing.  The letter also says Merritt will transfer these horses into her name to race them unless she hears from R&R and says Merritt will wait 48 hours before acting to allow R&R to object.

Based on these facts, the Court finds that defendants Merritt and Mer-Lyn have not acted in contempt of the Court's

Order.  The Order prohibits "selling or otherwise disposing" of the pinhooking horses.  Disposition is the "act of transferring something to another's care or possession, esp. by deed or will; the relinquishing of property."  Black's Law Dictionary (8th ed. 2004).

The gelding of Splashing Wave was neither a sale nor a "disposition" of the horse and so did not violate the terms of the Court's Order.  R&R has provided no evidence to contradict Elizabeth McKenna's testimony that the gelding was done for the safety of the horse, nor did R&R present any testimony to substantiate its allegation that gelding Splashing Wave damaged its value.  Moreover, the possibility that Splashing Wave might have to be gelded in order to be trained was expressly raised in Merritt's February 1, 2008, letter, forwarded to R&R, to which R&R never responded.  The gelding consequently cannot be the basis for a finding of contempt.

Katherine McKenna's entering Splashing Wave into "claiming races," in which the horse would have been required to be sold to any third-party who paid the claiming price, also cannot serve as the basis for contempt.  Placing Splashing Wave into such races arguably violated the Court's Order because it amounted to an irrevocable offer to sell the horse at a specified price.  The undisputed testimony of Katherine McKenna, however, was that Merritt did not know that Splashing Wave was being

entered into such races. Absent any evidence that Merritt knew of or acquiesced to Splashing Wave's participation in these races, the races cannot serve as a basis for finding the defendants in contempt.

The only possible basis for finding the defendants in contempt is the lease of Splashing Wave to Katherine McKenna. The four-year term of the lease amounted to a "disposition" of the horse prohibited by the terms of the Court's April 14, 2006, Order. The fact that Merritt provided notice of her "disposition" of the horse, and R&R's acquiescence to the disposition, mitigates strongly against any finding of contempt. Merritt gave R&R notice that Splashing Wave might be transferred to a trainer in the December 19, 2007, and February 1, 2008, letters forwarded to R&R. The February 2008 letter made clear that Splashing Wave and the other pinhooking horses were among the horses that Merritt intended to give to trainers to race at the trainers' expense, and the letter expressly notified R&R that Merritt intended to transfer ownership of the horses in order to allow them to race (although the ownership transfer contemplated in the letter was to Merritt and not to a trainer). The letter asked R&R to respond in 48 hours, but, according to the evidence at the hearing, R&R did not do so.

The fact that the lease to McKenna was terminated and the horse returned to Merritt and Pandora Farms also strongly

weighs against a finding of contempt.  The purpose of civil contempt is to coerce the party to be sanctioned into compliance with a court order or to compensate the complainant for losses sustained.  Local 28, Sheet Metal Workers' Int'l Assoc. v. EEOC, 478 U.S. 421, 443 (1986).  Here, the return of Splashing Wave to Merritt's possession means that there is no need for contempt sanctions to coerce compliance with the Court's Order, and R&R has provided the Court with no evidence that the value of Splashing Wave has been impaired from being trained and raced while the horse was leased to McKenna.

Weighing all these circumstances together, the Court finds that R&R has not established by clear and convincing evidence that the defendants are in contempt of the Court's April 14, 2006, Order.  Although the Court does not approve of the defendants' conduct and believes that they should have sought approval of this Court before leasing Splashing Wave to a third party, it does not find that their conduct rises to the level of contempt or warrants sanctions.  In reaching this conclusion, the Court notes that any future failure by the defendants to abide by this Court's Orders may not be viewed with the same leniency.

An appropriate Order will be issued separately.