```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R & R CAPITAL LLC              :      CIVIL ACTION
                               :
     v.                        :
                               :
LYN MERRITT, et al.            :      NO. 06-1554
```

MEMORANDUM

McLaughlin, J.                                     June 24, 2009

    In this suit, plaintiff R&R Capital LLC ("R&R") seeks replevin of two pinhooking horses and rescission of the purchase of a third. Defendants Lyn Merritt ("Merritt") and Mer-Lyn Farms LLC ("Mer-Lyn Farms") have counterclaimed for their alleged expenses incurred in caring for the three horses. The Court held a bench trial in this matter on October 25 and 26, 2006, and issued findings of fact and a partial verdict in a Memorandum and Order of April 17, 2009. Defendant Merritt has now moved to set aside the Court's ruling as mooted by an earlier decision by a New York state court in related proceedings. For the reasons set out below, the Court will deny the motion.

    In its findings of fact, set out in the April 17, 2009, Memorandum and Order, the Court found that R&R and Merritt entered into a series of business ventures beginning in 2003, in which they formed jointly-owned limited liability companies to invest in horses and real estate. Merritt was the managing partner of these limited liability companies and managed them

through her wholly-owned company, Mer-Lyn Farms. The Court found that Merritt and Mer-Lyn Farms were authorized to make purchases and pay bills on behalf of the limited liability companies and then later allocate these expenses to the appropriate jointly-owned entity.

The Court found that the three pinhooking horses at issue in this action were originally bought at the auction house Fasig-Tipton in August 2004. Evidence at trial conflicted as to which entity purchased the horses. Merritt contended that the horses were purchased on behalf of one of the parties' jointly-owned companies, Pandora Farms LLC ("Pandora Farms").[1]

In October 2004, R&R purchased these three pinhooking horses outright. The purchase of the pinhooking horses was originally to be part of a larger transaction in which R&R would be bought out of its interest in the parties' jointly-owned race horses, but the sale of the race horses was never completed. R&R paid for two of the three pinhooking horses by wiring money to Mer-Lyn Farms in the amount of the horses' purchase price from Fasig-Tipton. For the third horse, referred to in this litigation as "Lipstick/Pulpit," R&R paid by wiring the purchase price directly to Fasig-Tipton, in payment of the invoice for the original sale.

---

[1] Pandora Farms LLC subsequently changed its name to PDF Properties LLC, but will be referred to in this memorandum as Pandora Farms.

This third horse, Lipstick/Pulpit, is the subject of R&R's rescission claim.  In its April 17, 2009, Memorandum and Order, the Court found that, in order to resolve the rescission claim, the Court had to determine who sold Lipstick/Pulpit to R&R and who owned it at the time it was sold.  Merritt contended that both the owner and the seller was Pandora Farms.  R&R contended that the seller was Merritt, acting through her wholly-owned company, Mer-Lyn Farms.  Resolving the conflicting evidence on the issue, the Court found that Lipstick/Pulpit was sold to R&R by Merritt and was owned at the time of sale by Merritt's wholly-owned company, Mer-Lyn Farms.  The Court found that Lipstick/Pulpit was bought from Fasig-Tipton by Mer-Lyn Farms, with the intention that the horse and the responsibility for its purchase price would be later allocated to Pandora Farms, but that no such allocation was ever made.  The Court made no finding of fact as to the ownership of the other two horses at the time of their sale to R&R.

On the basis of this finding, the Court entered a conditional verdict against Merritt on R&R's claim for rescission in the amount of Lipstick/Pulpit's purchase price of $150,000, conditioned on R&R's filing proof of tender of its ownership of the horse to Merritt.  R&R filed proof of its tender of ownership with the Court on May 1, 2009.

With respect to the other two horses at issue in this litigation, referred to as "Splashing Wave" and "Mambo-Jambo," the Court found that Merritt and Mer-Lyn had conceded that R&R had purchased the two horses and was their owner, but that Merritt had a valid claim for unpaid expenses for those two horses.  The Court therefore found that R&R was liable to Merritt and Mer-Lyn on their counterclaim for expenses in the amount of $28,432.76 and that this gave rise to a valid possessory lien to the horses.  The Court found in favor of R&R on its claims for replevin of Splashing Wave and Mambo-Jambo, conditioned on R&R's payment of the counterclaim amount.

The Court, however, did not enter a verdict on R&R's replevin claim or the defendants' counterclaim in its April 17, 2009, Memorandum and Order.  While a decision on the bench trial was pending, R&R moved to hold the defendants in contempt for leasing Splashing Wave to a third party in alleged violation of this Court's orders.  Because the contempt motion suggested that R&R might no longer be seeking replevin of Splashing Wave, the Court only entered judgment in its April 17, 2009, Memorandum and Order on R&R's rescission claim, but not the replevin claim or counterclaim.  After a hearing, the court denied the defendant's motion for contempt on June 9, 2009.

After the April 17, 2009, Memorandum and Order was issued, but before the motion for contempt was decided, defendant

Merritt filed this motion, seeking to vacate the April 17, 2009, Memorandum and Order as moot.[2] The basis for Merritt's argument is a December 10, 2007, ruling in related litigation between R&R and Merritt in New York state court. Merritt contends that the New York ruling conclusively determined that Pandora Farms was and remains the owner of the three pinhooking horses at issue in this litigation, thereby deciding the central issue in this litigation and rendering these proceedings moot.[3]

---

[2] Merritt initially titled this motion as a "Motion for JNOV." A motion for "JNOV" or judgment <u>non obstante veredicto</u> or judgment notwithstanding the verdict is appropriate only in cases tried to a jury. See Fed. R. Civ. P. 50(a),(b). Recognizing this, in a subsequent letter to the Court, Merritt's counsel withdrew the request for a "JNOV" and stated that the relief Merritt seeks in her motion is relief from judgment under Rule 60(b). In her reply brief, Merritt suggests her motion seeks relief alternately under Rules 52(b), 59(e), and 60(b)(4). Merritt Reply Br. at 1 n.1. In addition, Merritt's initial motion sought to vacate only the Court's judgment on R&R's rescission claim. In her reply brief, she clarifies that she seeks to vacate the entire Memorandum and Order.

[3] Merritt raised an additional argument in her initial motion, contending that the Court's ruling in favor of R&R for rescission of the purchase of Lipstick/Pulpit should be vacated on the basis of newly proffered evidence. This new evidence was the deposition of Terrence Collier, an employee of the Fasig-Tipton auction house, taken in May 2009 as part of discovery for R&R's contempt motion. In it, Collier testified that Fasig-Tipton's records showed that the party who purchased the three pinhooking horses from it in August 2004 was Pandora Farms. Collier Dep. at 13, Ex. F. to Merritt's Motion. Merritt contended that this testimony contradicted the Court's finding that Merritt, not Pandora Farms, sold Lipstick/Pulpit to R&R and that at the time of sale Lipstick/Pulpit was owned by Mer-Lyn Farms.
   Merritt appears to have withdrawn this argument. Both at oral argument on the motion for contempt and in the reply brief in support of this motion, Merritt's counsel stated that

In November 2005, five months before this case was filed, R & R filed suit in the Supreme Court of New York against Merritt and Mer-Lyn Farms. The suit accused Merritt and her wholly-owned company, Mer-Lyn, of mismanaging R&R and Merritt's jointly-owned investments in real estate and horses. In addition to damages, the suit sought to conduct an accounting of Merritt and R&R's jointly-owned limited liability companies and to remove Merritt as the managing member of those companies.

---

Merritt was no longer relying on the Collier testimony as a basis for vacating the April 17, 2009, Memorandum and Order. See 6/4/09 Tr. at 99-100; Reply Br. at 3-4.

If Merritt were still advancing an argument based on the Collier affidavit, the Court would reject it for two independent reasons. First, Collier's name appears on exhibits that were introduced into evidence at trial, and his identity was therefore known to the parties before trial. Merritt has proffered no explanation why Collier's testimony could not have been presented at trial. Second, Collier's testimony is merely duplicative to the evidence already considered by the Court and would not change the Court's conclusion. The evidence at trial included Fasig-Tipton's invoices for the three pinhooking horses, all of which were made out to Lyn Merritt at Pandora Farms. The Court also had before it Leonard Pelullo's testimony that only Pandora Farms, but not Merritt or Mer-Lyn Farms, had a line of credit with Fasig-Tipton. The Court therefore had evidence before it at trial that Fasig-Tipton considered Pandora Farms to be the purchaser of the three horses in August 2004. As set out in its findings of fact, the Court considered this evidence, as well as other conflicting evidence, before reaching its conclusion that Merritt was the entity that sold Lipstick/Pulpit to R&R in October 2004 and that Mer-Lyn Farms was the entity that owned Lipstick/Pulpit at that time.

The suit in this Court, seeking replevin and rescission of the three pinhooking horses, was filed by R&R in April 2006. Prior to the bench trial, defendants Merritt and Mer-Lyn Farms moved unsuccessfully to stay this case pending the outcome of the New York litigation or, alternatively, to transfer this case to New York.  The Court denied the defendants' motions, finding that the issues in this suit were separate from those in the New York litigation.  See Docket No. 10 and 28.  This case concerned only the possession, ownership, and liability for cost of care of the three pinhooking horses; the New York litigation concerned the operation of the jointly-owned companies generally and disposition of jointly-owned property other than the three pinhooking horses.  Both this case and the New York litigation have gone forward separately, with the presiding judges in both cases aware of the other litigation.

The New York litigation has not yet concluded.  At oral argument, Merritt's counsel set out the procedural history of the New York litigation.  In 2007, Justice Ramos of the New York Supreme Court conducted a trial of R&R's claims and issued an oral ruling from the bench on December 10, 2007, finding that R&R had failed to present sufficient evidence to proceed on its claims against Merritt.  Justice Ramos did not resolve Merritt's counterclaims against R&R, but instead stayed the case to allow the parties to conduct mediation.  6/4/09 Tr. at 14-16.

In 2008, R&R filed related litigation in Pennsylvania and Delaware state courts. Merritt filed a petition before Justice Ramos to enjoin R&R from pursuing the Pennsylvania and Delaware state actions. Justice Ramos granted the injunction, ordering R&R to withdraw the Pennsylvania and Delaware actions, but also reopening the pleadings in the New York litigation to allow R&R to raise the claims in those actions before him. R&R has appealed the injunction order and the case is stayed pending the appellate decision. 6/4/09 Tr. at 16-18.

Merritt contends that Justice Ramos's ruling of December 10, 2007, in the New York litigation moots the Court's judgment on R&R's rescission claim for Lipstick/Pulpit. As framed by Merritt's counsel in his opening statement at the hearing, three issues were presented to Justice Ramos for decision at the December 10, 2007, hearing: whether or not R&R had reached a contract with Merritt to have Merritt buyout R&R's 50% interest in their jointly-owned race horses; whether Merritt had been unjustly enriched by the sale of some of those race horses; and whether Merritt had failed to pay her required share of expenses for the jointly-owned companies. 12/10/07 Tr. in R&R Capital, et al. v. Merritt, Index No. 604080/05 (N.Y. Supreme Ct.) (hereinafter "12/10/07 Tr.") at 2-3. In ruling on the first of these issues, Justice Ramos found that the racehorses at issue were initially owned by Pandora Farms (which was itself owned 50-

50% by Merritt and R&R); that the proposed contract for Merritt to purchase R&R's interest in these horses was never consummated; and that the owner of these horses remained Pandora Farms:

> I find there's no agreement to sell those horses. The horses were owned by Pandora Farms. That appears to be the case then and now. I've seen nothing to indicate those horses were transferred. While these negotiations were going on, clearly the parties were acting as if they were going to do that deal. And the books and records reflect it. But I don't see anything after June or July of 2005 that indicates that these transactions were going down any more.

12/7/07 Tr. at 110.

Merritt makes two separate, but related, arguments based on this ruling. First, Merritt argues that, because R&R's purchase of the pinhooking horses was at least initially intended to be part of a larger transaction in which R&R would sell its interest in the parties' jointly-owned race horses to Merritt, Justice Ramos' finding that the racehorse transaction was never consummated means that R&R's purchase of the pinhooking horses must also be considered void: "Because the pinhooking purchase by [R&R] was part of the racehorse buy[-]out transaction with Merritt, and because that transaction has been voided by Justice Ramos, the horses in question still belong to Pandora [Farms]." Merritt Br. at 7.

This argument is unpersuasive. The fact that Merritt and R&R once contemplated a broader transaction involving both

R&R's purchase of the pinhooking horses and the buyout of R&R's share of the racehorses does not mean that the failure of the racehorse buyout voids or unravels the pinhooking transaction.

Although Merritt repeatedly refers to the pinhooking transaction as "part" of the racehorse buyout, she has presented no evidence that the purchase of the pinhooking horses was expressly contingent on the racehorse deal being completed or that the parties made any provision for rescinding the pinhooking purchase in the event the larger transaction fell through, nor has Merritt disputed that the pinhooking transaction was completed before the racehorse deal fell apart.  At trial, Merritt did not dispute that R&R paid the full purchase price for the three pinhooking horses in October 2004, wiring $367,000 to Mer-Lyn Farms in payment for Mambo-Jambo and Splashing Wave and wiring $150,000 to Fasig-Tipton in payment of its invoice for Lipstick/Pulpit, and Merritt conceded that, with these payments, ownership of the three horses passed to R&R.

On these facts, Justice Ramos' finding that the racehorse buyout was never consummated does not affect the validity of this Court's findings of fact concerning R&R's purchase of the three pinhooking horses or undermine in any way this Court's April 17, 2007, Memorandum and Order.

Merritt's second argument is to construe Justice Ramos' December 10, 2007, decision as applying, not just to the

10

racehorse transaction, but to the pinhooking transaction as well. When Justice Ramos states that he finds that "[t]here was no meaningful or legally enforceable agreement to sell those horses" and that "[t]he horses are owned by Pandora Farms," Merritt interprets his reference to "horses" to refer both to the racehorses involved in the buyout and to the pinhooking horses purchased by R&R, arguing that Justice Ramos' ruling therefore "effectively established that there was no agreement between the parties as to the racehorse buy out, including the pinhooking horses, and Pandora Farms, LLC still owns all the horses." Merritt Br. at 6 (quoting 12/10/07 Tr. at 110).

Merritt's interpretation of Justice Ramos' ruling is unsupportable. Nothing in the transcript of the December 10, 2007, proceedings before Justice Ramos suggests that he intended to encompass the pinhooking horses in his ruling. In his opening statement, Merritt's counsel stated that the issue involving horses to be decided at the hearing was "whether or not there is a contract involving the alleged sale of the racehorse stock, 50 percent of it, that is, from R&R to Merritt." 12/10/07 Tr. at 2. Nowhere in the December 10 hearing transcript does Justice Ramos, or any counsel or witness, refer to the pinhooking horses, either directly or indirectly, nor is any evidence presented to the court concerning those horses. The only horses mentioned are the jointly-owned racehorses.

11

Merritt's suggestion that Justice Ramos intended to rule sub silentio on the ownership of the pinhooking horses, without hearing any evidence concerning them, is entirely implausible.[4] It is also belied by the care that Justice Ramos has taken in conducting the New York litigation to avoid reaching issues concerning the pinhooking horses that are before this Court. In an earlier portion of the New York trial, held February 26, 2007, Justice Ramos discussed with counsel several paragraphs of R&R's operative New York complaint that referenced the pinhooking horses:

> THE COURT: At [paragraphs] 147 and 151 there is something about Pinhooking-horses. Maybe, we can agree that those ducks have been taken to another market that is being litigated down in Philadelphia?
>
> [R&R COUNSEL]: Yes.
>
> [MERRITT'S COUNSEL]: Okay.

---

[4] The Court also notes that, even if Justice Ramos' ruling could be construed to encompass the pinhooking horses, which it plainly cannot, it would still not necessarily moot the issues before the Court. First, given that the New York litigation has not concluded and that Justice Ramos has apparently allowed R&R's pleadings to be reopened, it is not clear whether the December 10, 2007, ruling is final. Second, because the action before this Court concerning the pinhooking horses is in rem, it is questionable whether any other court could have jurisdiction to rule on the ownership of the horses. See Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466-67 (1939) (holding that the first court to assume jurisdiction over property "may maintain and exercise that jurisdiction to the exclusion" of any other).

12/10/07 Tr. in R&R Capital, Index No. 604080/05 (N.Y. Supreme Ct.) at 120.

The Court finds Justice Ramos' December 10, 2007, ruling clearly and unambiguously pertains only to the racehorses at issue in the New York litigation and not the pinhooking horses at issue in this case.  The Court, accordingly, rejects Merritt's argument that the December 10, 2007, ruling in any way moots any of the issues before this Court.  Merritt's motion to vacate the Court's April 17, 2009, Memorandum and Order is therefore denied.

An appropriate Order will be issued separately.