IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R & R CAPITAL LLC                 :           CIVIL ACTION
                                  :
        v.                        :
                                  :
LYN MERRITT, et al.               :           NO. 06-1554

_____

MEMORANDUM

McLaughlin, J.                                       July 7, 2009

        This is an action concerning three "pinhooking" horses.
In a Memorandum and Order entered April 17, 2009, this Court
issued findings of fact and a partial verdict on the bench trial
in this matter.  In a Memorandum and Order entered June 24, 2009,
this Court denied the defendants' Motion for Relief under Federal
Rule of Civil Procedure 60(b), which was incorrectly styled as a
"Motion for JNOV" and which sought to vacate the April 17, 2009,
Order.  Also on June 24, 2009, by separate Order, the Court
entered a final judgment in this matter, entering judgment for
the plaintiff, R&R Capital LLC ("R&R"), on its claims for
replevin of two of the pinhooking horses and rescission of the
purchase of the third and for the defendants, Lyn Merritt
("Merritt") and Mer-Lyn Farms LLC ("Mer-Lyn"), on their
counterclaim for the expenses incurred in caring for these
horses.

        Defendants Merritt and Mer-Lyn now move for
reconsideration of these Orders under Federal Rules of Civil

Procedure 59(e) and 60(b), requesting that the Court vacate them as moot.  Their motion principally advances the argument, previously considered and rejected by this Court, that this action has been mooted by an order of a New York state court in related litigation, R&R Capital, et al. v. Merritt, Index No. 604080/05, pending in the New York Supreme Court before the Honorable Justice Charles E. Ramos.  As alternative relief, the defendants ask the Court to stay its judgment to allow them to petition the New York court and ask it to clarify the ruling upon which they base their claims of mootness.

The Court has previously considered the defendants' mootness arguments in its June 24, 2009, Memorandum and Order addressing the defendants' "Motion for JNOV."  The defendants argued that this case had been mooted by a December 10, 2007, ruling by Justice Ramos, finding that an alleged contract for Merritt to buy out R&R's interest in jointly-owned race-horses had never been consummated.  The Court carefully considered the defendants' arguments and rejected them.  The Court found that the December 10, 2007, ruling of the New York court concerned only the parties' jointly-owned racehorses and did not concern the three pinhooking horses at issue in this case.  The Court also considered and rejected the defendants' argument that Justice Ramos' finding that the sale of the racehorses was never

2

consummated necessarily requires that R&R's purchase of the three pinhooking horses must be considered void.

In asking for reconsideration of the Court's ruling on their claim of mootness, the defendants present neither new evidence or new argument. The defendants suggest that the Court incorrectly based its ruling on "snippets" and "excerpts" of the record of the New York litigation. In ruling on the defendants' "Motion for JNOV," the Court had before it the entire transcript of both the December 10, 2007, hearing in the New York litigation and the previous hearing held February 26, 2007, as well as the plaintiff's operative complaint. The Court reviewed both transcripts and the complaint in reaching its conclusion that Justice Ramos' December 10, 2007, decision did not encompass the pinhooking horses at issue in this case and did not moot this action. The defendants have provided no basis for the Court to reconsider its ruling on mootness, nor to order this action stayed to seek clarification from the New York court.[1]

---

[1]     At several points in its Motion for Reconsideration, the defendants quote from an October 23, 2007, Memorandum and Order in which this Court referred to the "possibility of conflicting Orders concerning the same property." The defendants' Motion, however, fails to make clear that this October 23, 2007, Memorandum and Order was issued in a different action, Case No. 07-2869, involving different property and different issues.

In Case No. 07-2869, filed in July 2007, plaintiff R&R sued defendant Merritt and four other defendants not at issue in this case seeking 1) to prevent Merritt from transferring real estate in Chester County, Pennsylvania, jointly owned by Merritt and R&R, to a company wholly-owned by Merritt; and 2) to void

The defendants also raise several other issues with the Court's verdict in favor of R&R on the claim for rescission of the purchase price of the horse referred to as "Lipstick/Pulpit." The defendants allege that several of the Court's findings of fact concerning the "Lipstick/Pulpit" transaction contradict findings made by Justice Ramos in the New York litigation and that these alleged contradictions require that this Court dismiss

---

several allegedly improper transfers of real estate in the Greys Ferry section of Philadelphia, jointly owned by Merritt, R&R and another defendant. Merritt and the other defendants moved to stay Case No. 07-2869, arguing that the issues it raised were already being addressed in the New York litigation before Justice Ramos. In the New York litigation, filed in November 2005, R&R sought to remove Merritt as managing partner of their joint ventures, to have an accounting of the joint ventures, and to recover damages for fraud, breach of contract and unjust enrichment. As part of the New York proceedings, Justice Ramos had issued an order allowing Merritt to dispose of property owned by the joint ventures, with 48 hour notice to R&R. Merritt provided R&R such notice with respect to the Chester County properties, and after receiving this notice, R&R filed Case 07-2869, seeking to enjoin the transfer.

The Court's Memorandum and Order of October 23, 2007, in Case No. 07-2869 granted the defendants' motion to abstain under Colorado River, finding that Case No. 07-2869 and the New York litigation were "parallel proceedings" and that if they both proceeded, they would "create the very real possibility of directly contrary injunctive orders concerning the sale of the same Chester County properties, neither of which would be res judicata to the other because neither would constitute a final order." Because of this "possibility of conflicting orders concerning the same property," the Court abstained.

Case 07-2869 therefore involved real property that all parties agreed was at issue in the New York litigation and over which Justice Ramos had already asserted jurisdiction and issued orders controlling its disposition. This case, in contrast, involves property not directly at issue in the New York litigation.

4

this case as moot and "send R&R back to Justice Ramos on any horse related claims and issues."

In its findings of fact in its April 19, 2009, Memorandum of Law, the Court found, based on a preponderance of evidence presented at trial, that the horse Lipstick/Pulpit was purchased in August 2004 from the auction house Fasig-Tipton by Merritt's wholly-owned company, Mer-Lyn, with the intention of later allocating the horse to Pandora Farms LLC ("Pandora Farms"), one of the parties' jointly-owned ventures, but that no such allocation took place.  The Court further found that Merritt sold Lipstick/Pulpit to R&R in October 2004 for a purchase price of $150,000, which R&R paid directly to Fasig-Tipton in satisfaction of its invoice for the horse.  The Court found that, in making this sale, Merritt did not disclose that Lipstick/Pulpit had been diagnosed with laminitis after being purchased in August 2004 and that this omission warranted rescission of the purchase.

The defendants contend that the Court's finding that Merritt sold Lipstick/Pulpit to R&R is contradicted by certain findings by Justice Ramos in the New York litigation.  In ruling that there was no enforceable agreement for Merritt to purchase R&R's interest in the parties' jointly-owned racehorses, Justice Ramos found that those racehorses were owned by Pandora Farms and that R&R could not have contracted to sell its interest in those

horses to Merritt because such a transaction would have ignored Pandora Farms' ownership.  The defendants contend that these findings mean that "Merritt made no misrepresentation to the Russacks and that Russack knew that Pandora owned the horses."

The defendants' argument is misplaced.  There is no contradiction between Justice Ramos' findings concerning the ownership of the racehorses and this Court's findings concerning the ownership of Lipstick/Pulpit.  Each ruling concerns a separate, although related, transaction.  Moreover, even if this Court's findings could be found to conflict with those of Justice Ramos, such a contradiction would neither moot this action nor require reconsideration of this Court's findings.  Both this Court and the New York court have jurisdiction over the matters before them and both have issued findings based on the evidence presented to them.  The fact that the issues before them are related and that their findings may conflict does not prevent the two cases from proceeding to final judgment:  "The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action."

<u>Univ. of Md. at Balt. v. Peat Marwick Main & Co.</u>, 923 F.2d 265, 275-76 (3d Cir. 1991).[2]

The defendants also challenge certain of Court's findings of fact concerning the rescission of the purchase of Lipstick/Pulpit, alleging that they are unsupported by the factual record.  The defendants challenge the Court's finding that Lipstick/Pulpit was purchased from Fasig-Tipton by Mer-Lyn Farms, rather than Pandora Farms, on the basis of a December 11, 2004, management service agreement between R&R and Merritt.  The management service agreement states that Mer-Lyn "has been and will continue to provide services and advance funds" on behalf of the parties jointly-owned entities for the purposes of, among other things, "enter[ing] into agreements with and pay vendors, contractors and suppliers" and "purchase supplies as necessary in

---

[2]      As the Court suggested in its Memorandum and Order denying the defendants' Motion for JNOV, to the extent any exception to the "general rule" discussed in <u>Univ. of Md.</u> applies to these cases, it is likely that the rulings of this Court concerning the pinhooking horses would moot any contrary rulings of the New York Court under the jurisdictional principles set out in <u>Princess Lida of Thurn and Taxis v. Thompson</u>, 305 U.S. 456, 466-67 (1939).  <u>Princess Lida</u> held that, although ordinarily two suits involving the same issues can proceed simultaneously in state and federal court, where the suits at issue are <u>in rem</u> actions concerning property, the first court to exercise <u>in rem</u> jurisdiction over the property at issue "may maintain and exercise that jurisdiction to the exclusion" of any other.  Here, this action, initially filed as a claim for replevin of the three pinhooking horses, is an <u>in rem</u> action.  The New York action, filed as a claim for fraud and an accounting of the jointly-owned limited liability properties is not an <u>in rem</u> action and does not directly concern the pinhooking horses.

connection with the operation of the Companies."  The defendants contend that, under the management service agreement, Mer-Lyn was not authorized to purchase assets for the jointly-owned companies and therefore could not have been authorized to purchase Lipstick/Pulpit.

The request for reconsideration based on the management service agreement will be denied.  The management service agreement is not newly discovered evidence.  It was admitted into evidence at the bench trial in this matter and duly considered by this Court in reaching its findings of fact.  The agreement was entered in December 11, 2004, four months after Lipstick/Pulpit and the other pinhooking horses were purchased from Fasig-Tipton in August 2004, and its terms do not govern Mer-Lyn's authority to purchase the horses.[3]

Merritt's own testimony at trial established, as found by the Court in its April 17, 2009, findings of fact, that Mer-Lyn Farms paid Fasig-Tipton for two of the pinhooking horses, Splashing Wave and Mambo-Jambo, and that these expenses were later to be allocated to Pandora Farms, although no documentation of any allocation was presented to the Court.  10/25/06 Tr. at 32-34.  The Fasig-Tipton invoice for Lipstick-Pulpit (which was

---

[3]     Even by its terms, the agreement does not prevent Mer-Lyn from purchasing assets on behalf of the jointly-owned ventures.  The agreement contains no express prohibition of asset purchases and authorizes Mer-Lyn to enter into agreements with "vendors."

made out to Pandora's Farms) was not paid by Mer-Lyn, but was paid by R&R as the price for its purchase of the horse.  After considering the conflicting evidence at trial, the Court determined, by a preponderance of the evidence, that Mer-Lyn Farms purchased Lipstick-Pulpit from Fasig-Tipton in August 2004 and still owned the horse when Merritt sold it to R&R in October 2004.  The defendants' motion presents no new evidence to justify reconsideration of that conclusion.

The defendants' final argument in their motion for reconsideration challenges the Court's findings that Merritt and her agent and fiancé, Leonard Pelullo, made certain misrepresentations and omissions of fact to Ira and Harvey Russack, the principals of R&R.  The Court found that the Russacks were not told that pinhooking horses would be purchased at the August 2004 Fasig-Tipton auction.  The Court also found that, prior to R&R's purchasing Lipstick/Pulpit in October 2004, neither Harvey or Ira Russack was ever told that Lipstick/Pulpit had been found to be lame in August 2004, shortly after being purchased, or that Merritt had subsequently sought to return the horse to Fasig-Tipton, or that the horse had been diagnosed as suffering from laminitis.

To challenge these findings, the defendants principally rely on the deposition of Leonard Pelullo, which was admitted into evidence at the bench trial and duly considered by this

Court.  The defendants contend that Pelullo's testimony that he
spoke to the Russacks almost daily and gave them detailed
information about the horses on the parties' jointly-owned
property requires that this Court reverse its findings about
Merritt and Russack's misrepresentations and omissions.[4]  The
defendants also proffer testimony from Harvey and Ira Russack in
the New York litigation, in which Harvey Russack confirms he
spoke to Pelullo daily and Ira Russack testified that Pelullo
offered to have other investors purchase the parties' horses.

        The Court previously considered Leonard Pelullo's
testimony in reaching its findings of fact and conclusions of
law.  The Court weighed Pelullo's general and conclusory
testimony against the testimony of the Russacks (whose
credibility the Court had an opportunity to evaluate), and made
its findings.  Nothing in the defendants' motion warrants
reconsideration of those findings.

        An appropriate Order will be issued separately.

---

[4]     In its findings, the Court noted that neither Merritt
nor Pelullo testified that they "specifically told either Russack
that pinhooking horses would be purchased at the [August 2004]
auction."  The defendants contend this finding is contradicted by
Pelullo's deposition testimony, in which, after being asked
whether he "fully explained the relationship between Pandora
Farms and the pinhooking [horses] to the Russacks," he testified,
"They knew it.  They authorized the purchases. . . . I briefed
him on everything. . . ."   Pelullo's general statements that he
told the Russack's "everything" do not contradict the Court's
finding that neither Pelullo nor Merritt ever testified that they
specifically told the Russack's that pinhooking horses would be
purchased at the auction.

10